[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 08, 2002
THOMAS K. KAHN
CLERK

No. 00-16094

D. C. Docket No. 98-08169 CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEREMY BENDER,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

**(May 8, 2002)**

Before ANDERSON, Chief Judge, DUBINA and MARCUS, Circuit Judges.

DUBINA, Circuit Judge:

This is a child pornography case. A federal grand jury charged Appellant Jeremy Bender ("Bender") in a three-count federal indictment with (1) knowingly transporting, by computer, visual depictions of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(1) (Counts I and II); and (2) knowingly possessing a computer disk which contained three or more images transported by computer in interstate commerce and which depicted a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count III). A jury found Bender guilty on all three counts. The district court sentenced him to 160 months imprisonment on Counts I and II, and 60 months imprisonment on Count III, all to be served concurrently. Bender appeals his convictions and sentences, and we affirm.

## I. BACKGROUND

Several America OnLine ("AOL") subscribers complained to AOL about the receipt of different inappropriate e-mails from someone using the screen name DMAN665580 ("DMAN"). These inappropriate e-mails sent by DMAN to 121 e-mail addresses included two pornographic images. The first image depicted a minor female nude from the waist down sitting with her legs open and spreading her genitalia. The second image depicted a naked minor female leaning against a

counter top. AOL provided this information to the Florida Department of Law Enforcement ("FDLE") in Broward County, Florida.

Pursuant to subpoenas to AOL and BellSouth, FDLE received information that revealed that the person sending the e-mails used a computer located at 1734 22nd Avenue North in Lake Worth, Florida. Agents obtained a search warrant, and U.S. Customs Agent Gregory Stine ("Agent Stine"), FDLE Special Agent Don Condon ("Agent Condon"), and other members of the Law Enforcement Against Child Harm Task Force ("LEACH") conducted a search of the home at that address. Bender's grandmother, Mary Bender, her partner, Shirley Hill, and Bender were in the house at the time of the search. After acknowledging that they had an AOL account, Bender told Agent Condon that he used the screen name DMAN.

Agents read Bender his *Miranda*[1] rights and he signed a written waiver of those rights. He told Agent Condon that there were two computers in the house, a Packard Bell and an Apple Macintosh. Bender stated that he used the Packard Bell to access AOL and the Apple Macintosh to play games. Bender confirmed that he was the only person who had accessed AOL during the previous 90-day period. Bender stated that people had sent him sexually explicit pictures approximately 20

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

times, and that he had sent sexually explicit pictures approximately 10 to 20 times. He further stated that some of the pictures he received portrayed children approximately 10 years old. He assured Agent Condon that he was responsible for all of the trading of the pictures on-line. The agents seized both computers.

At trial, Dr. Dory Solomon ("Dr. Solomon"), Assistant Professor of Pediatrics at the University of Miami School of Medicine, testified as an expert witness in the area of pediatrics, particularly in the determination of children's ages. Dr. Solomon examined 16 pictures found on the hard drive of the Packard Bell computer that agents had seized at Bender's residence. The record shows that, with one possible exception, each of these pictures portrayed at least one female child engaged in sexually explicit conduct. The record also shows that seven of the female children and one male child appeared to be prepubescent or under the age of 12. One of the pictures portrayed an adult male penis penetrating a preadolescent female's vagina. Dr. Solomon stated that this female appeared to be 10 years old. Dr. Solomon noted that the photographs generally portrayed naked children, some orally or digitally stimulating the genitalia of adult males, some

digitally stimulating their own genitalia, and some displaying their own genitalia. Dr. Solomon testified that the photographs appeared to portray real children.[2]

Glenn Darkins ("Darkins") testified at trial that he met Bender while they were both in prison. According to Darkins, Bender told him that on two consecutive Sundays, he received two e-mails containing child pornography. When Darkins said to Bender, "you knew you were getting child pornography," Bender smiled. (R. Vol. 9, p. 510.) Bender told Darkins that he also received many other e-mails containing child pornography mixed with adult pornography.

Joe Menavich ("Menavich"), the manager in charge of AOL's Securities Investigation Graphic Review Team, explained the transmission of e-mails and the identification process for screen names. He testified that when an AOL subscriber sends an e-mail to another AOL subscriber, the e-mail always travels through AOL's server in Northern Virginia en route to the recipient. Menavich identified the e-mail sent by someone using the screen name DMAN, and the images attached, which started the investigation. He also identified other e-mails

---

[2]In *Ashcroft v. Free Speech Coalition*, 122 S.Ct. 1389, (U.S. April 16, 2002) (No. 00-795), the United States Supreme Court held that the prohibitions of 18 U.S.C. §§ 2256(8)(B) and 2256(8)(D) are overbroad and unconstitutional. These provisions are not at issue in the present case. Moreover, because there is sufficient evidence that the images portray real children, we conclude that *Free Speech Coalition* is not pertinent to the issues we must decide.

containing child pornography which Bender received and downloaded to the Packard-Bell hard drive.

In his defense, Bender called his grandmother, her partner, and two friends to testify. Additionally, Dr. Sam Hsu ("Dr. Hsu"), an Associate Professor in the Department of Computer Science and Engineering at Florida Atlantic University, testified for Bender as an expert witness in the field of computer science. From his review of the records from Bender's computers, Dr. Hsu concluded that the disk integrity was good, but that the evidence of exactly who was using the screen name DMAN was not strong enough to substantiate that it was Bender. He also testified that the name of the file was not always indicative of what was in the file.

## II. ISSUES

(1) Whether the district court abused its discretion in permitting Dr. Solomon to testify as an expert in the determination of children's ages.

(2) Whether the evidence was sufficient to establish that the computer images portrayed actual children.

(3) Whether the district court erred in instructing the jury that it was not required to find an intent to affect interstate commerce.

(4) Whether the district court abused its discretion in denying Bender's motion for a mistrial or failing to grant Bender's motion for a new trial.

6

(5) Whether a delay in the indictment caused the suppression of exculpatory evidence, requiring reversal of Bender's convictions.

(6) Whether this court will consider Bender's claim of ineffective assistance of counsel on appeal.

(7) Whether the district court erred in applying United States Sentencing Guidelines ("USSG") § 2G2.2, rather than USSG § 2G2.4, because Bender sent and received pornographic images by computer.

(8) Whether the district court erred in applying the two-level enhancement under USSG § 2G2.2(b)(1) because the photographs depicted prepubescent minors under the age of 12.

(9) Whether the district court erred in applying the four-level enhancement under USSG § 2G2.2(b)(3) because the photographs depicted sadistic, masochistic, or other violent conduct.

(10) Whether the district court erred in applying the five-level enhancement under USSG § 2G2.2(b)(2) because Bender distributed photographs for pecuniary or other gain.

(11) Whether Bender's sentence violates *Apprendi*[3] because his total sentence exceeds the statutory maximum based upon enhancements not included in the indictment.

## III. STANDARDS OF REVIEW

The district court's finding that a witness is qualified to render an expert opinion is a matter within the judge's broad discretion and will not be reversed unless it is manifestly erroneous. *United States v. Carrazana*, 921 F.2d 1557, 1567 (11th Cir. 1991).

This court reviews *de novo* whether the record contains sufficient evidence to support a jury's guilty verdict. *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997). We view the evidence in the light most favorable to the government, "with all reasonable inferences and credibility choices made in the government's favor." *Id.*

When a defendant does not move the district court for a judgment of acquittal at the close of the evidence, we may reverse the conviction only to prevent a manifest miscarriage of justice. *United States v. Hamblin*, 911 F.2d 551, 556-57 (11th Cir. 1990). This standard requires the appellate court to find that the evidence on a key element of the offense is so tenuous that a conviction would be

---

[3] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

shocking. *Id.* at 557 n.2 (quoting *United States v. Tapia*, 761 F.2d 1488, 1491-92 (11th Cir. 1985)).

We conduct a *de novo* review of the district court's jury instructions when determining "whether they misstate the law or mislead the jury to the prejudice of the objecting party." *United States v. Grigsby*, 111 F.3d 806, 814 (11th Cir. 1997). We give the district court wide discretion as to the style and wording employed in the instructions, ascertaining that the instructions accurately reflect the law. *United States v. Starke*, 62 F.3d 1374, 1380 (11th Cir. 1995).

The trial judge has discretion whether to grant a mistrial "since he [or she] is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." *United States v. Mendez*, 117 F.3d 480, 484 (11th Cir. 1997) (quoting *United States v. Satterfield*, 743 F.2d 827, 848 (11th Cir. 1984)). When a district court gives a curative instruction, the reviewing court reverses "only if the evidence 'is so highly prejudicial as to be incurable by the trial court's admonition.'" *United States v. Lozano-Hernandez*, 89 F.3d 785, 789 (11th Cir. 1996) (quoting *United States v. Funt*, 896 F.2d 1288, 1295 (11th Cir. 1990)).

This court generally reviews for abuse of discretion a district court's denial of a motion for a new trial based on a *Brady*[4] violation. *United States v. Kersey*,

[4]*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

9

130 F.3d 1463, 1465 (11th Cir. 1997). "If, however, the defendant did not precisely articulate a *Brady* violation in his or her motion for new trial, this court need only conduct a plain error review." *Id.*

We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record. *United States v. Khoury*, 901 F.2d 948, 969 (11th Cir. 1990), *modified on other grounds*, 910 F.2d 713 (11th Cir. 1990). If the record is sufficiently developed, however, this court will consider an ineffective assistance of counsel claim on direct appeal. *United States v. Camacho*, 40 F.3d 349, 355 (11th Cir. 1994). "Whether a criminal defendant's trial counsel was ineffective is a mixed question of law and fact, subject to *de novo* review." *Nixon v. Newsome*, 888 F.2d 112, 115 (11th Cir. 1989).

We review a sentencing court's findings of fact for clear error and review the district court's application of the sentencing guidelines to the facts *de novo*. *United States v. Tucker*, 136 F.3d 763, 764 (11th Cir. 1998).

## IV. <u>DISCUSSION</u>

After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we conclude that there is no merit to any of the arguments Bender presents in this appeal and summarily affirm Bender's convictions and

10

sentences as they pertain to issues 1-5, 8, and 11.[5] We also decline to consider

Bender's claim of ineffective assistance of counsel on direct appeal. We do,

however, feel compelled to discuss issues 7, 9, and 10.

A. USSG § 2G2.2 v. § 2G2.4

Bender argues on appeal that the district court erred in applying USSG §

2G2.2 (trafficking in material involving the sexual exploitation of a minor), rather

than Section 2G2.4 (possession of materials depicting a minor engaged in sexually

explicit conduct), which addresses the conduct the government charged in Counts 1

and 2. Bender asserts that the district court should not have applied to his sentence

the enhancements for violence and distribution for gain under Section 2G2.2

because he merely possessed, as opposed to distributed, child pornography.

In the district court, Bender raised an issue regarding whether Section 2G2.2

applied, but he did not present the specific issue of whether Section 2G2.4 should

apply rather than Section 2G2.2. We review this issue for plain error only because

Bender failed to present the issue in the district court. *United States v. Stevenson*,

68 F.3d 1292, 1294 (11th Cir. 1995). "For the court to correct plain error: (1) there

must be error; (2) the error must be plain; and (3) the error must affect substantial

rights." *Id.* (citation omitted).

---

[5]*See* 11th Cir. R. 36-1.

The guideline applicable to possession of child pornography is USSG § 2G2.4. Section 2G2.4(c)(2) instructs the sentencing court to apply Section 2G2.2 if the offense involved "trafficking in material involving the sexual exploitation of a minor (including receiving, transporting, shipping, advertising, or possessing material involving the sexual exploitation of a minor with intent to traffic) . . . ." USSG § 2G2.4(c)(2). We conclude that the district court properly sentenced Bender under Section 2G2.2 because the evidence presented at trial demonstrated that he was more than a mere possessor of pornography. The evidence showed that Bender received and transmitted the child pornography. Agent Condon testified that when questioned, Bender admitted that people sent him numerous child pornographic images via the computer and that he was responsible for the trading of pictures on-line. Moreover, Bender's AOL on-line account records showed that he had sent, via the Internet, child pornographic images to other on-line users.

In *United States v. Johnson*, 221 F.3d 83 (2d Cir. 2000), *cert. denied*, 533 U.S. 953, 121 S.Ct. 2599, 150 L.Ed.2d 757 (2001), the Second Circuit addressed an issue similar to the one raised here. In ruling that the district court correctly applied Section 2G2.2, the *Johnson* court pointed to the fact that the defendant had admitted to possessing numerous computer images of minors engaging in sexually explicit conduct and had conceded that he did "send and receive" child

12

pornography. *Id.* at 98. The government presented similar evidence against Bender which demonstrated that he admitted to law enforcement officers that the child pornography found on the computer was his and that he sent and received child pornography. Because we conclude that the evidence presented at trial supported the district court's application of Section 2G2.2, there is no plain error.

B. Four-Level Enhancement Under Section 2G2.2(b)(3).

Bender contends that the district court erred in applying the four-level enhancement under Section 2G2.2(b)(3) because it found that the offense involved material that portrayed sadistic conduct. Bender argues that the child pornography material that he possessed was not violent in nature and did not include any sadistic or masochistic images. The government responds that the photographs portrayed conduct that would have been painful to the minor child, including vaginal or anal penetration of a minor by an adult male. This conduct qualifies as "sadistic" under Section 2G2.2(b)(3) and thus warrants the four-level enhancement.

In *United States v. Garrett*, 190 F.3d 1220 (11th Cir. 1999), we addressed the issue of what constitutes sadistic images under Section 2G2.2(b)(3). We ruled that a photograph is sadistic within the meaning of Section 2G2.2(b)(3) when it depicts the "subjection of a young child to a sexual act that would have to be painful." *Id.* at 1224. This includes photographs of very young children being

vaginally and anally penetrated by adult males. *Id.* Having reviewed the computer images in this case, we conclude that the district court properly applied the four-level enhancement under Section 2G2.2(b)(3) because several of the pornographic photographs clearly depict "the subjection of a young child to [sic] sexual act[s] that would have to be painful." *Id.* Pursuant to *Garrett*, Bender's conduct is sufficient to warrant the enhancement.

C. Five-Level Enhancement Under Section 2G2.2(b)(2)

Bender argues that the district court erred in applying a five-level enhancement under Section 2G2.2(b)(2) (enhancement for distribution for gain). Specifically, Bender contends that the district court should not have applied Section 2G2.2(b)(2) because the government did not demonstrate that he distributed the pornography for "pecuniary gain" or "valuable gain" and that there was "no real proof of distribution." (Appellant's Brief at 61.)

The district court, relying on *United States v. Probel*, 214 F.3d 1285 (11th Cir. 2000), *cert. denied*, 531 U.S. 939, 121 S.Ct. 331, 148 L.Ed.2d 266 (2000), overruled Bender's objection to the Section 2G2.2(b)(2) enhancement because the guidelines did not require any pecuniary or other gain. Under the 1999 version of Section 2G2.2(b)(2), this ruling would have been correct. The government

concedes, however, that the district court applied the wrong version of the sentencing guidelines for this enhancement.

Before the Sentencing Commission amended the guidelines in 2000, Section 2G2.2(b)(2) stated that "[i]f the offense involved distribution, increase by the number of levels from the table in [Section] 2F1.1 corresponding to the retail value of the material, but in no event by less than 5 levels." USSG § 2G2.2(b)(2) (1999). Because the district court sentenced Bender on November 3, 2000, however, the district court should have applied the amended 2000 version of Section 2G2.2(b)(2). *United States v. Marin*, 916 F.2d 1536, 1538 (11th Cir. 1990) (stating that the sentencing court must employ the guidelines in effect at the time of the sentencing hearing). Pursuant to the amended version of Section 2G2.2(b)(2), the district court should increase the base offense level for trafficking in child pornography by five-levels if the offense involved "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain . . . ." Thus, under the version of Section 2G2.2(b)(2) in effect at the time of Bender's sentencing, enhancement was warranted when the distribution was for the receipt or expectation of receipt of a thing of value.

Although it is clear that the district court applied the wrong version of Section 2G2.2(b)(2), we conclude that the amended Section 2G2.2(b)(2) would

15

support an enhancement in this case. Joining several of our sister circuits, we hold

that when a defendant trades child pornography in exchange for other child

pornography, the defendant has engaged in "distribution for the receipt, or

expectation of receipt, of a thing of value" as provided in the 1999 version of

USSG § 2G2.2(b)(2).[6] Here, the government presented sufficient evidence at trial

to support a finding that Bender sent child pornography so that he would receive

other child pornography in exchange. Thus, Bender distributed the child

pornography expecting to receive a thing of value – other child pornography – and

this conduct justified the district court's imposition of the five-level enhancement

under the guideline. Because the district court's application of the incorrect

version of Section 2G2.2(b)(2) is otherwise supported by the record, we uphold it

in this case. *United States v. Villarino*, 930 F.2d 1527, 1529 (11th Cir. 1991)

(stating that sentencing court's error in making findings did not preclude

---

[6]Other circuits have held that trading in child pornography constitutes distribution for a thing of value warranting the five-level distribution enhancement under USSG § 2G2.2(b)(2). *See United States v. Brown*, 15 Fed. Appx. 180 (4th Cir. 2001); *United States v. Coggins*, 15 Fed. Appx. 164 (4th Cir. 2001), *cert. denied,* ___U.S. ___, 122 S.Ct. 1120 (2002); *United States v. Blair*, 16 Fed. Appx. 592 (9th Cir.), *cert. denied,* ___ U.S. ___, 122 S.Ct. 384 (2001); United States v. Lyckman, 235 F.3d 234, 240 (5th Cir. 2000), *cert. denied*, 532 U.S. 986, 121 S.Ct. 1634, 149 L.Ed.2d 494 (2001); *United States v. Burnette*, 234 F.3d 1270 (6th Cir. 2000) (unpublished table decision)*, cert. denied*, 531 U.S. 1201, 121 S.Ct. 1210, 149 L.Ed.2d 123 (2001); *United States v. Horn*, 187 F.3d 781, 791 (8th Cir. 1999), *cert. denied*, 592 U.S. 1029, 120 S.Ct. 1442, 146 L.Ed.2d 330 (2000); *United States v. Laney*, 189 F.3d 954, 961 (9th Cir. 1999).

meaningful appellate review where evidence clearly supported court's application of the guidelines).

For the foregoing reasons, we affirm Bender's convictions and sentences.

**AFFIRMED.**