[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-13281
Non-Argument Calendar

_____

D.C. Docket No. 03-00028-CR-1-WLS-1

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 10, 2005
THOMAS K. KAHN
CLERK**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROGERS LEE JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Middle District of Georgia

_____

(June 10, 2005)

Before TJOFLAT, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Rogers Lee Jackson was indicted for five counts of possession with intent to

distribute more than five grams of crack, in violation of 21 U.S.C. § 841.

The evidence at trial established that the DEA organized controlled buys using a confidential informant ("CI") who would call Jackson's cell phone and arrange to purchase crack. In most cases, the meeting occurred at Jackson's home and each phone call and meeting was tape recorded. Over defense counsel's objections, the CI identified Jackson's voice on the tape, and identified Jackson as the person with whom he met to purchase crack. According to the DEA forensic chemist, the total weight from the five exchanges involving the CI was 58 grams of crack. In an interview after his arrest, Jackson identified his cocaine sources, and informed agents that he purchased approximately one kilogram of powder cocaine per week for a year, which he converted to crack.

After the government rested, and Jackson decided not to testify, defense counsel explained that he intended to call no witnesses because "[w]hile we have subpoenaed six witnesses and as I understand that are available and outside the courtroom ready to testify, in light of further discussion with Mr. Jackson, we would present no evidence." The jury convicted Jackson of all five counts.

The probation officer prepared a presentence investigation report ("PSI"), grouping the five counts together and assigning a base offense level of 36 under U.S.S.G. §§ 3D1.2 and 2D1.1(c)(2) because Jackson was held accountable for more than 500 grams, but less than 1.5 kilograms of crack. Jackson's resulting

guidelines range was 188 to 235 months imprisonment. Both Jackson and the government objected to the amount of drugs attributed to Jackson.

At sentencing, the government presented testimony from several people who stated that they had been involved in drug deals with Jackson. Tracey Timly admitted that he used to purchase crack from Jackson, and that he typically made one purchase each week of two or three cookies each time with Jackson as his only supplier. He explained that a cookie weighed about 25 grams and cost about $650 to $750. Timly further explained the process by which powder cocaine was converted to crack. Calvert Brown testified that he purchased crack from Jackson two or three times by contacting Jackson via cell phone.

Nevoria Jackson stated that in February 2002 he sold 20 cookies to Jackson for $5,000. Crystal Young testified that she purchased crack from Jackson over a few years and that she usually bought about $20 worth at a time, but that she had seen larger quantities at Jackson's home.

Jackson again decided not to testify, and defense counsel did not proffer any other evidence. The government argued that the court should consider these drug transactions as relevant conduct, and it claimed that it was proper to offer testimony on the conversion from powder to crack through a lay person familiar with the process. According to the government, even using conservative estimates

on the amount of yield from the conversion process, Jackson was responsible for more than 1.5 kilograms of cocaine, which was supported by Jackson's own statements to DEA and ATF agents after his arrest. Defense counsel responded that there was no scientific evidence to support the conversion amounts, and the testimony of a drug trafficker was not sufficient.

The court took the issue under advisement and continued sentencing. When sentencing reconvened, the court explained that a one-to-one ratio of powder to crack cocaine was not proper, and that the government failed to meet its burden establishing the accurate ratio. Accordingly, the court overruled the government's objection to the drug quantity. The court also overruled Jackson's objection to drug quantity, finding that Jackson was responsible for the 58 grams proven at trial plus relevant conduct in the sales to Brown and Timly and the purchase from Nevoria Jackson. The court sentenced Jackson to concurrent 235-month terms of imprisonment on each count, and concurrent five-year terms of supervised release on each count. Jackson now appeals, raising two issues: (1) his sentence is unconstitutional in light of Blakely v. Washington, 542 U.S. –, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and (2) trial counsel was constitutionally defective. Because we conclude that the record is not sufficiently developed for us to address

Jackson's ineffective-assistance-of -counsel claim on direct appeal, we need not discuss that issue.[1]

Jackson argues that his sentences are unconstitutional because he was held accountable for conduct not charged in the indictment or proven to a jury beyond a reasonable doubt, in violation of Blakely.

When a defendant fails to object to an error before the district court, this court reviews the  argument for plain error.  United States v. Hall, 314 F.3d 565, 566 (11th Cir. 2002); see also United States v. Olano, 507 U.S. 725, 731-32, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Hall, 314 F.3d at 566; Olano, 507 U.S. at 732.  Here, although Jackson objected to the

_____

[1] Ineffective assistance of counsel is a mixed question of law and fact that this court reviews de novo.  United States v. Freixas, 332 F.3d 1314, 1316 (11th Cir. 2003); United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). This court generally does not consider ineffective-assistance-of-counsel claims on direct appeal unless the record is sufficiently developed.  Freixas, 332 F.3d at 1319 n.3; Bender, 290 F.3d at 1284.  Here, the record is not sufficiently developed for this court to address the claim.  Cf. Freixas, 332 F.3d at 1319 n.3 (finding the record sufficiently developed because the court questioned the defendant concerning counsel during the plea colloquy and held a hearing on the defendant's request to withdraw her plea based on counsel's alleged failure to discuss the case with her).  Jackson may bring this claim in a post-conviction collateral appeal under 28 U.S.C. § 2255.

quantity of drugs for which he was held accountable, he did not do so based on Blakely. Accordingly, we apply plain error review.

The U.S. Supreme Court in the landmark case of Blakely v. Washington, 124 S.Ct. 2531 (2004), reversed an upward departure imposed pursuant to the State of Washington's state sentencing guidelines. The Court applied the rule in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely, 124 S.Ct. at 2536-38. In reversing the upward departure, the Supreme Court held that the "relevant statutory maximum for Apprendi purposes is the maximum a judge may impose based solely on the facts reflected in the jury verdict or admitted by the defendant." Id. at 2537. The Court explicitly noted "[t]he Federal Guidelines are not before us, and we express no opinion on them." Id. at 2538 n.9.

Thereafter, the Supreme Court issued its decision in United States v. Booker, 543 U.S. –, 125 S.Ct. 738, – L.Ed.2d – (2005), finding "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue" in Blakely. Booker, 125 S.Ct. at 749. Resolving the constitutional question left open in Blakely, the Court held that the mandatory

6

nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. Id. at 749-51. In extending its holding in Blakely to the Guidelines, the Court explicitly reaffirmed its rationale in Apprendi. Id. at 756.

In a second and separate majority opinion, the Court in Booker concluded that, to best preserve Congress's intent in enacting the Sentencing Reform Act of 1984, the appropriate remedy was to "excise" two specific sections—18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including de novo review of departures from the applicable guideline range)—thereby effectively rendering the Sentencing Guidelines advisory only. Id. at 764. The Court explained that district courts are not bound to apply the Sentencing Guidelines, but "must consult those Guidelines and take them into account when sentencing." Id. at 767. The Court then announced that, under the remaining provisions of § 3742, courts of appeals must review sentences for "unreasonable[ness]." Id. at 765. The Court further indicated that both its "Sixth Amendment holding and . . . remedial interpretation of the Sentencing Act" must be applied to "all cases on direct review." Id. at 769. The Court cautioned, however, that not every sentence will give rise to a Sixth Amendment violation,

7

nor would every appeal lead to a new sentencing hearing. Id. The Court instructed reviewing courts to apply "ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test." Id.

We conclude that Jackson cannot show plain error in the imposition of his sentence. See United States v. Rodriguez, 398 F.3d 1291 (11th Cir.), petition for cert. filed, No. 04-1148 (Feb. 23, 2005) (acknowledging that a Booker error was plain, but holding that, in order to show that his substantial rights were affected under plain error review, the appellant must show that his sentence would have been different but for the court's use of the mandatory guidelines). There is no evidence in the record to show that Jackson's sentence would have been different but for the mandatory guidelines. Accordingly, we AFFIRM Jackson's convictions and sentences.

Tjoflat, Circuit Judge, concurring specially:

As I explain in my dissent to the court's refusal to rehear Rodriguez en banc, the error in a case such as this—where the district court enhances the defendant's sentence on the basis of facts not admitted by the defendant or found by a jury—is structural error, and the third prong of the plain-error test is, therefore, inapplicable. See United States v. Rodriguez, — F.3d —, 2005 WL 895174 (11th Cir. Apr. 19, 2005) (Tjoflat, J., dissenting from the denial of rehearing en banc).[1]  Accordingly, the court should consider whether the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings," United States v. Olano, 507 U.S. 725, 736, 113 S. Ct. 1770, 1779, 123 L. Ed.2d 508 (1993), and in this case, it does.  I concur in the court's judgment because we are Rodriguez bound.

---

[1] Jackson fails to establish the third prong of the plain error standard because he has not shown (from whatever the district judge may have said on the record at his sentencing hearing) "that his sentence would have been different but for the court's use of the mandatory guidelines." Ante at _____.  As a practical matter, such a showing is - in this case and in almost every case of Booker plain error review - impossible to make.

9