[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 15, 2007
THOMAS K. KAHN
CLERK

No. 06-14088
Non-Argument Calendar

_____

D. C. Docket No. 04-00030-CR-002-CDL-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HERMAN DANNY DEAN, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(March 15, 2007)**

Before TJOFLAT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Herman Danny Dean, Jr., appeals his convictions for armed bank robbery, in violation of 18 U.S.C. § 2113(a),(d), and using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), (c)(4).  For the first time, on

appeal, Dean argues that the district court erred by allowing Dr. Cindy Parker, a board-certified emergency room physician who the government did not offer as an expert witness, to testify as an expert witness.[1] More specifically, according to Dean, Dr. Parker was permitted to give opinions beyond the reasonable limits of her expertise, and to opine that during her treatment of him, Dean's conduct was "a little bit bizarre." After careful review, we affirm.

Normally, we would review a district court's evidentiary rulings for abuse of discretion. United States v. Turner, 474 F.3d 1265 (11th Cir. 2007). An erroneous evidentiary ruling does not require reversal if the resulting error was harmless, meaning that "there is a reasonable likelihood that [it] affected the defendant's substantial rights." United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999) (internal citations and quotation marks omitted). However, where, as here, a defendant does not preserve his challenge to an evidentiary ruling by

---

[1] For this first time, in this direct appeal, Dean also asserts various claims of ineffective assistance of trial counsel. We will not address these issues as the record is not sufficiently developed for our review. See United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002) (holding that we will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record); see also Massaro v. United States, 538 U.S. 500, 504-05 (2003) (noting that an appellate court generally cannot adequately decide an ineffective-assistance-of-counsel claim raised for the first time on appeal because the focus at trial was not on whether defense counsel's actions were prejudicial or supported by reasonable strategy). The preferable means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion, "even if the record contains some indication of deficiencies in counsel's performance." Massaro, 538 U.S. at 504-05. Although Dean filed a § 2255 motion asserting, among other things, that his counsel failed to file a notice of appeal, the ineffective-assistance claims that Dean now raises on direct appeal were never addressed by the district court and the record is not otherwise developed on the claims.

contemporaneously objecting, our review is only for plain error. Id. Under plain error review, the defendant bears the burden to show that there is "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003) (internal quotations and citations omitted).

The parties are familiar with the relevant facts and we only summarize them here. On June 23, 2004, Dean and a co-defendant, Michael Edward Bailey, were indicted for armed bank robbery, in violation of 18 U.S.C. § 2113(a),(d) (Count One), and using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), (c)(4) (Count Two), arising out of their involvement in the robbery of an ATM in the bank where Dean worked. Bailey entered a guilty plea and testified at Dean's subsequent jury trial. In addition to Bailey's testimony about his planning of the robbery with Dean, the government also presented the testimony of some of law enforcement and Dean's co-workers, as well as Dr. Cindy Parker who treated Dean upon his arrival at the hospital after the ATM robbery.

Dr. Parker is an emergency room physician who specializes in emergency medicine. She had been a physician since 1994, and before then, was a paramedic from 1978 to 1990. During his treatment by Dr. Parker, Dean claimed that he had been struck on the back of his head with the butt of a gun during the ATM robbery. After looking at Dean's head to see if he had any lacerations, abrasions, or bruises, Dr. Parker found no abnormalities. Dr. Parker stated that her observations were inconsistent with Dean's claim that he had been struck with the butt of a gun. Dr. Parker described Dean as tearful and not totally forthcoming with answers to questions, and said that she found this behavior to be "a little bit bizarre," so she decided to perform a CAT scan on his head. Before conducting the CAT scan, she felt the right occipital area of Dean's head, where he indicated he had been struck, and noticed that there was no swelling there. The CAT scan was normal and revealed no abnormalities to Dean's skull. Dr. Parker had prepared a medical report of her treatment of Dean and reviewed that report prior to testifying. According to the report, there was no evidence of edema (swelling) or hematoma (swelling that is caused by bleeding underneath the skin).

Dr. Parker indicated that prior to her treatment of Dean, she had treated approximately 20 patients who had complained of injuries caused by being hit in the head by a pistol. Normally, such patients have a lot of swelling, and sometimes

4

a cut.  Notably, at <u>no</u> point did Dean object to Dr. Parker's testimony or request the district court to evaluate her qualifications.

For the first time, Dean now claims that the district court erred by allowing Dr. Parker's testimony, which Dean contends was expert testimony subject to the "gatekeeping" requirements of Rule 702 of the Federal Rules of Evidence.[2] "Rule 702 compels the district court to perform the critical 'gatekeeping' function concerning the admissibility of" expert evidence.  <u>United States v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (citations omitted).  "This function inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards of admissibility under Rule 702."  <u>Id.</u> (internal quotation, alteration, and emphasis omitted).  This objective is to ensure the reliability and relevance of the expert testimony.  <u>Id.</u> (quoting <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 152 (1999)).

---

[2]Rule 702 provides the following:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In determining the admissibility of expert testimony, district courts must consider whether (1) the expert is qualified to testify competently regarding the matters she intends to address; (2) the methodology by which the expert reaches her conclusions is sufficiently reliable as determined by the sort of inquiry mandated by Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. Id. "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." Id. at 1262 (quoting Kumho Tire, 526 U.S. at 152).[3]

It is undisputed that Dean failed to object either to Dr. Parker's testimony or to the district court's failure to qualify her as an expert. In Frazier, the defendant made a similar claim, arguing that the district court erred by failing to conduct a sua sponte determination of the expert qualifications of two FBI investigators. See 387 F.3d at 1268 n.21. Applying plain error review, we were

---

[3] Rule 403, in turn, permits a district court to exclude relevant evidence only when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We consider "Rule 403 . . . an extraordinary remedy that should be used sparingly because it allows the court to exclude admittedly probative evidence." Ross, 33 F.3d at 1524. Thus, a trial court's discretion to exclude evidence as unduly prejudicial is "narrowly circumscribe[d]." United States v. Cross, 928 F.2d 1030, 1048 (11th Cir. 1991) (citation omitted). "The 'major function' of Rule 403 'is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" Id. (citation omitted).

6

unpersuaded that "the district court, <u>when faced with no objection</u>, was obliged to formally memorialize its determinations regarding qualifications and reliability on the record." <u>Id.</u> (emphasis in original). We discerned no error, let alone plain error, where the investigators "demonstrated expert qualifications before offering any opinions, and provided specific and detailed quantitative bases for their opinions[.]" <u>Id.</u>

Here, like in <u>Frazier</u>, the defendant has not carried his burden to show error, let alone plain error, resulting from the district court's failure to engage in a formal determination of Dr. Parker's qualifications. A review of her testimony makes clear that she demonstrated expert qualifications in the field of emergency medicine -- she had been an emergency room physician since 1994, was board-certified in emergency medicine, had been a paramedic before becoming a physician, and had examined approximately 20 patients complaining of being hit in the head with a pistol -- <u>and</u> provided a detailed explanation, based on her own personal observation and examination of Dean, for her opinion. Dr. Parker reviewed her own medical report detailing her treatment of Dean before testifying, and did <u>not</u> rely upon any extra-record evidence in presenting her testimony. Moreover, Dr. Parker's testimony that (1) there was no evidence of edema or hematoma, and (2) Dean's claim of being hit by the butt of a gun was inconsistent

with her own medical examination of Dean's head, was based on her own observations and was not beyond any reasonable limits of her expertise as an emergency room physician.

As for Dean's challenge to Dr. Parker's description of his behavior as "a little bit bizarre," this claim is without merit. Dr. Parker indicated that during her examination of Dean, he was tearful, and was not totally forthcoming with answers to questions, which prompted her to conduct a CAT scan. Dr. Parker's testimony that Dean's behavior was "bizarre" came in the context of her decision to perform a CAT scan. Even if the admission of this testimony constituted error that was plain, Dean could not carry his burden on the third prong of the plain error test -- an effect on his substantial rights -- given that several other government witnesses testified to the fact that Dean was not acting normally and that Dean's head appeared normal after the robbery.

Based on the foregoing, we discern no plain error in the admission of Dr. Parker's testimony and accordingly affirm Dean's convictions.

**AFFIRMED.**