[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15199
Non-Argument Calendar
_____

D.C. Docket No. 4:12-cr-00024-RH-CAS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISAAC GASPER,
a.k.a. Big Ike,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(July 26, 2013)

Before HULL, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Isaac Gasper appeals his convictions for conspiracy to possess with intent to distribute cocaine, distributing cocaine, and possession with intent to distribute cocaine, cocaine base, and marijuana. On appeal, Gasper argues that the evidence at trial was insufficient to support his conviction for possession with intent to distribute cocaine, cocaine base, and marijuana. For the reasons set forth below, we affirm Gasper's convictions.

I.

In May 2012, a federal grand jury returned an indictment, charging Gasper with conspiracy to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846 (Count 1); distributing cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count 2); and possession with intent to distribute 28 grams of cocaine base, cocaine, marijuana, and methylenedioxymethamphetamine ("MDMA") in violation of 26 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), (b)(1)(C), and (b)(1)(D) (Count 3). As to Count 3, the indictment alleged that the charged offense occurred on March 6, 2012.

At the outset of trial, the government moved to amend Count 3 to omit the amount of cocaine base and the MDMA charge, and the court granted the motion. The government then presented several witnesses over the course of a two-day trial. In relevant part, Telly Diaz Thomas, a federal inmate who had pled guilty to drug conspiracy charges, testified that he "routinely" sold drugs to four people,

2

including Gasper.  Further, Thomas estimated that, during 2009 and 2010, he provided Gasper with as much as four and a half ounces of cocaine approximately every three weeks.  Next, Jorge Turo, a federal inmate convicted of distributing drugs, testified that, between 2009 and July 2011, he purchased drugs from Gasper seven or eight times, and he could have purchased drugs from Gasper regularly.

Edward Paul Sieg, who had also pled guilty to drug charges, testified that he assisted agents from the Drug Enforcement Administration ("DEA") by participating in a "controlled purchase" of cocaine from Gasper.  Specifically, in February 2012, Sieg negotiated to purchase 14 grams of cocaine from Gasper for a price of between $500 and $550.  The government played a video recording of this transaction for the jury and, during the video, Sieg testified that he met Gasper at a residence and purchased the drugs.

Finally, David Wilson, a DEA agent, testified that, on March 6, 2012, two weeks after the controlled purchase, the DEA executed a search warrant at the residence where the controlled purchase had occurred.  During the search, Gasper agreed to talk with Agent Wilson, and he admitted that all of the evidence that was seized during the search belonged to him.  The government and Gasper stipulated that the search resulted in the seizure of 252.2 grams of marijuana, 13.9 grams of cocaine, 3.3 grams of cocaine, 1.8 grams of cocaine base, and 3 grams of cocaine base.  Agent Wilson then testified that DEA agents also discovered other "nondrug

evidence," including three digital scales, baggies, and containers with "false compartments."  In Agent Wilson's experience, digital scales are frequently used in drug distribution to weigh the drugs to be sold.  Additionally, baggies are also frequently used to distribute drugs, and the containers that were discovered had "false compartments," which can be used to transport drugs or currency while appearing to contain other items.  When Agent Wilson questioned Gasper after his arrest, Gasper told DEA agents that he "got back in the drug business due to some financial difficulties," but that "he was just selling small amounts of cocaine."  Gasper admitted that he had been selling drugs for three to five months and, at the most, he sold quarter-ounce quantities of cocaine.

At the conclusion of trial, the jury found Gasper guilty on all counts.

## II.

Generally, we review the sufficiency of the evidence to support a conviction *de novo*, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict."  *United States v. Taylor*, 480 F.3d 1025, 1026 (11th Cir. 2007).  However, when a defendant does not move for a judgment of acquittal at the close of the evidence, we will reverse the conviction only to prevent a manifest miscarriage of justice.  *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir.2002).  "This standard requires the appellate court to find that the evidence on a key element of

4

the offense is so tenuous that a conviction would be shocking." *Id.* A jury is free to choose among reasonable constructions of the evidence, and it is unnecessary for the evidence to exclude every reasonable hypothesis of innocence, provided that a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Williams*, 390 F.3d 1319, 1323-24 (11th Cir. 2004).

To sustain a conviction under § 841(a)(1) for possession with intent to distribute a controlled substance, the government must prove: (1) knowledge; (2) possession; and (3) intent to distribute. *See* 21 U.S.C. § 841(a)(1); *United States v. Faust*, 456 F.3d 1342, 1345 (11th Cir. 2006). Knowledge, possession, and intent can be proved by direct or circumstantial evidence. *United States v. Poole*, 878 F.2d 1389, 1391-92 (11th Cir. 1989). Intent to distribute can be proven circumstantially from the quantity of drugs and the existence of implements, like scales, that are commonly used in connection with the distribution of cocaine. *Id.* at 1392.

As an initial matter, Gasper, on appeal, challenges only his conviction as to Count 3 and, thus, he has abandoned any challenges to his convictions on Counts 1 and 2. *See United States v. Woods*, 684 F.3d 1045, 1064 n.23 (11th Cir. 2012) (deeming an issue abandoned where the appellant failed to develop any argument on the issue in his opening brief). Further, Gasper did not move for a judgment of

5

acquittal as to Count 3 at the conclusion of the evidence. Although Gasper suggests that he preserved his instant arguments by presenting them to the jury, he does not claim that he moved for a judgment of acquittal. Thus, we will affirm Gasper's conviction unless he can show that a reversal is necessary to prevent a manifest miscarriage of justice. *See Bender*, 290 F.3d at 1284.

Gasper has not shown that his conviction for possession of cocaine, cocaine base, and marijuana with intent to distribute resulted in a manifest miscarriage of justice. At trial, Thomas testified that, during 2009 and 2010, he routinely sold drugs to Gasper. Further, Turo testified that, between 2009 and 2011, he purchased cocaine from Gasper on seven or eight occasions, and he could have done so on a regular basis. Additionally, in February 2012, Gasper sold cocaine to Sieg during a controlled purchase. This evidence of Gasper's history of purchasing and selling drugs is circumstantial evidence of his knowing possession of drugs with intent to distribute.

On appeal, Gasper argues that his intent to distribute cannot be inferred solely from the small drug quantities that were discovered during the search on March 6, 2012, as those quantities supported a verdict of possession only for personal use. However, the government's case was not based solely on the drug quantities involved. To the contrary, evidence also showed that Gasper possessed items such as scales and packaging materials that are frequently used in

distributing drugs, and his possession of these items was circumstantial evidence of his intent to distribute drugs. *See Poole*, 878 F.2d at 1391-92. Finally, in his post arrest statement, Gasper admitted that he had been involved in the "drug business" and had been selling small amounts of cocaine. Thus, Gasper's own statements showed his intent to distribute. In sum, the evidence of Gasper's intent to distribute drugs was not so tenuous that his conviction as to Count 3 is shocking. *See Bender*, 290 F.3d at 1284.

For the foregoing reasons, we affirm Gasper's convictions.

**AFFIRMED.**