[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 31, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15691
Non-Argument Calendar

_____

D. C. Docket No. 05-00449-CR-JOF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HILARY EGHOSA AGBAI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 31, 2007)**

Before ANDERSON, BIRCH and BARKETT, Circuit Judges.

PER CURIAM:

Hilary Eghosa Agbai appeals his 41-month sentence for use of a counterfeit

device, in violation of 18 U.S.C. § 1029(a)(2) and (b)(1). On appeal, Agbai argues that his sentence was procedurally unreasonable, and thus invalid, because the district court applied the Guideline range as presumptively reasonable. Additionally, Agbai contends his sentence was substantively unreasonable. We AFFIRM.

## I. BACKGROUND

A grand jury charged Agbai with one count of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2, and five counts of credit card fraud, in violation of 18 U.S.C. § 1029(a)(2) and (b)(1). Agbai pled guilty to one count of credit card fraud as part of a plea agreement, and the government agreed to dismiss the remaining counts in the indictment. The plea agreement, however, also provided that the government could use the conduct charged in the dismissed counts as part of Agbai's relevant conduct in calculating his Guideline range.

According to the Presentence Investigation Report ("PSI"), between 2001 and 2004, Agbai: (1) used stolen credit cards and false identification to access credit and financial resources; (2) used stolen personal information to obtain new credit cards, on which he charged thousands of dollars; (3) used a fake driver's license and a fraudulently-obtained credit card to lease a vehicle; and (4) opened fraudulent bank accounts and deposited stolen checks into them. Agbai was

2

assisted in his bank fraud and credit card schemes by Kevin Tate; Agbai directed Tate on various occasions to open fake bank accounts and negotiate funds in those accounts. In October 2003, Agbai and Tate were arrested after Agbai attempted to purchase computer equipment using a stolen credit card and a fake driver's license. The offense to which Agbai pled guilty took place in January 2004, when Agbai once again attempted to purchase computer equipment using a stolen credit card and a fake driver's license. At the time of his arrest, Agbai possessed the victim's name, date of birth, social security number, and address. Agbai had purchased the identification and the victim's personal information from a flea market. Again, Agbai recruited Tate to participate in the credit card and bank fraud schemes, and he also had provided Tate with the information and identification necessary to open fraudulent bank accounts. Tate pled guilty to one count of bank fraud and was sentenced to 24 months of imprisonment.

In preparing the PSI, the probation officer began with a base offense level of 6, then added 12 points due to the amount of loss involved (calculated at $304,318.34), 2 points because Agbai's offense involved the use of unlawful means of identification, and 2 points for Agbai's leadership role in the offense. As a result, Agbai had a total offense level of 22 and a criminal history category of I, which produced an advisory Guideline range of 41-51 months of imprisonment.

Agbai objected to the PSI as follows: (1) he denied several of the claims by Tate regarding Agbai's involvement with Tate; (2) he denied involvement in the bank fraud scheme with Tate, which accounted for a significant portion of the loss amount; (3) he sought a reduction for acceptance of responsibility; (4) he claimed that the restitution total was too high because some of the credit card purchases were lawful; and (5) he denied recruiting or directing Tate to participate in any of the schemes and, therefore, should not have received a role enhancement. In light of his objections, Agbai asserted that the total offense level should have been 10, resulting in an advisory Guideline range of 6-12 months of imprisonment.

At the sentencing hearing, the district court heard, and deemed credible, testimony by Tate. As a result, Agbai's objections–to his involvement in the bank fraud scheme, to other claims by Tate, and to his role in directing Tate–all failed. Agbai withdrew his objection to the restitution amount. The district court denied Agbai's request for a reduction for acceptance of responsibility because Agbai had denied his participation in relevant conduct. Thus, the total offense level did not change as a result of the sentencing hearing.

The district court gave Agbai the opportunity to argue for a particular advisory Guideline sentence or for a sentence outside the advisory Guidelines. Agbai asserted that, under § 3553(a), a sentence of 12 months of imprisonment

4

would be appropriate. Agbai noted that he had a virtually spotless criminal history before coming to Atlanta and that he was "redeemable." R6 at 75. In response, the government reiterated its recommendation for a sentence of 41 months of imprisonment, arguing that because Agbai denied much of his most significant criminal conduct, there was no basis for providing a sentence below the low end of the advisory Guideline range. The government asserted that Agbai deserved to serve more time than Tate because Agbai, unlike Tate, had done nothing to assist the government.

After both sides had completed their arguments, the district court stated:

All right. I've been at this for a long time and for prosecutors and defense lawyers and for judges there's some cases that are very interesting and there are some that are cookie-cutter cases.

I remember as a young assistant U.S. Attorney we used to make theft of mail, forgery and government check cases, and AUSA Gail McKenzie handled those and I think she must have handled 200 or 300 a year with the aid of the postal inspectors and everyone was just like every other one.

The reason I'm saying that is that this is a cookie-cutter bank fraud, credit card fraud case. There's nothing unusual about it. The defendant has already gotten credit for having no criminal history. This is a pervasive kind of offense. Specific and general deterrence is of great concern to society with this sort of thing.

Behind all of the other charging language is a victim some place that may have been subject to identity theft and all of the pain and aggravation that goes with it.

5

I would imagine the vast majority of the sentences in this kind of case are Guideline sentences. Certainly I gave his codefendant a Guideline sentence or something that approaches these Guidelines. I don't remember whether it was a Guideline sentence or not.

So I don't see any call to give other than a Guideline case because I think that cookie-cutter cases that are devoid of unusual features ought to get the same sentence as others similarly situated.

Id. at 78-79. Accordingly, the district court sentenced Agbai to 41 months of imprisonment. Agbai then "object[ed] to the sentence as an unreasonable sentence under 18-3553(a), and [] maintain[ed] [his] previous objections as well." Id. at 81.

## II. DISCUSSION

On appeal, Agbai argues that his sentence was procedurally unreasonable, and thus invalid, because the district court applied the Guideline range as presumptively reasonable. Agbai relies heavily on our opinion in United States v. Hunt, 459 F.3d 1180 (11th Cir. 2006), and argues that the district court "treated the [G]uideline range as presumptively reasonable for an entire class of cases, rather than for this defendant in particular." Appellant Br. at 11. According to Agbai, the district court failed to consider the factors set forth in 18 U.S.C. § 3553(a), as applied to him, as it was required to do by United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).

Agbai also argues that his sentence was substantively unreasonable under the § 3553(a) factors. In support of that argument, he asserts that the nature and

6

circumstances of his offense indicate that his sentence is too severe in light of the relatively small amount of actual loss caused. Agbai contends that the amount of actual loss was only $16,400.34, and thus, the vast majority of the loss was intended loss that never materialized. The inclusion of the entire amount of intended loss in the advisory Guideline calculation resulted in a 12-level increase for Agbai. He also maintains that: (1) the history and characteristics of his life demonstrate that the sentence is unreasonable because his life has been, for the most part, honorable; (2) the need to promote respect for the law and provide just punishment does not warrant the sentence imposed; (3) the need for deterrence and to protect the public can be met by a much shorter sentence; (4) the Guidelines failed to yield a reasonable sentence; (5) the need to avoid unwarranted sentencing disparities would be served by a sentence below the Guideline range because his co-defendant, Tate, who already had numerous felony convictions, received a shorter sentence than Agbai; and (6) the need for restitution would be met by a shorter sentence because the prison term imposed will make it more difficult for him to pay the amount of restitution ordered.

We review the final sentence imposed by the district court for reasonableness. United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005) (per curiam). "Our review for reasonableness is deferential." United States v.

7

Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006) (alterations, internal quotations, and citation omitted).  Unreasonableness may be procedural, when the district court's procedure does not follow Booker's requirements, or substantive.  See Hunt, 459 F.3d at 1182 n.3.

In Rita v. United States, ___ U.S. ___, 127 S. Ct. 2456, 2468-69 (2007), the Supreme Court considered, inter alia, what constitutes a legally sufficient statement of reasons by the district court for imposition of a sentence under 18 U.S.C. § 3553(c).  The Court noted that a lengthy explanation is not necessarily required when a judge decides to follow the Guidelines in a particular case.  The Court stated:

> [c]ircumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3353(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical.  Unless a party contests the Guidelines sentence generally under § 3553(a)–that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way–or argues for departure, the judge normally need say no more.

Id. at ___, 127 S. Ct. at 2468 (emphasis added).  The Court also concluded, however, that "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."  Id. (citation

8

omitted).  In holding that the sentencing judge's explanation in <u>Rita</u> was adequate, the Court noted that the sentencing judge listened to the arguments, considered the supporting evidence, and was fully aware of the defendant's special conditions and work history.  <u>Id.</u> at ___, 127 S. Ct. at 2469.  Ultimately, the sentencing judge found the defendant's circumstances insufficient to warrant a sentence below the Guideline range.  <u>Id.</u>  The Court added that the sentencing judge could have said more by noting, for example, that

> he thought the Commission in the Guidelines had determined a sentence that was proper in the minerun of roughly similar perjury cases; and that he found that Rita's personal circumstances here were simply not different enough to warrant a different sentence.  But context and the record make clear that this, or similar, reasoning, underlies the judge's conclusion.

<u>Id.</u>

We disagree with Agbai's assertion that the district court applied the advisory Guidelines as presumptively reasonable and that its explanation of Agbai's sentence was inadequate.  The record established that the district court considered § 3553(a) factors.  It mentioned that: (1) there was nothing unique about Agbai's case; (2) there was a need for specific and general deterrence; (3) there were real victims; and (4) there was a need to ensure that Agbai's sentence was consistent with those of similarly-situated defendants who commit similar offenses.  As in <u>Rita</u>, while the sentencing judge "might have said more," <u>see</u> <u>id.</u>,

9

the district court stated that it thought the facts made Agbai's offense a "cookie-cutter case."  R6 at 78.  Essentially the district court indicated that it thought the advisory Guideline range was "proper in the minerun of roughly similar" cases, see Rita, ___ U.S. ___, 127 S. Ct. at 2469, and Agbai's personal circumstances were simply not different enough to warrant a different sentence.  Consequently, the district court's explanation of its sentence was adequate, and we cannot say here that Agbai's sentence, at the low end of the advisory Guideline range, was unreasonable given the offense and his conduct.

## III.  CONCLUSION

The record establishes that district court properly considered 18 U.S.C. § 3553(a) factors in addition to the advisory sentencing Guidelines range.  We cannot say that Agbai's sentence, at the low end of the advisory range, was unreasonable.  Consequently, we **AFFIRM**.