[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 24, 2008
THOMAS K. KAHN
CLERK

No. 07-12113
Non-Argument Calendar

_____

D. C. Docket No. 06-00204-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERICK BILLINGS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 24, 2008)**

Before BIRCH, DUBINA and MARCUS, Circuit Judges.

PER CURIAM:

Erick Billings appeals his convictions, and 27-month concurrent sentences,

for three counts of providing false information to a federally licensed firearms

dealer, in violation of 18 U.S.C. § 924(a)(1)(A). On appeal, Billings raises these claims: (1) the district court erred by denying his motion to withdraw his guilty plea; (2) the district court erred by denying his motion for an acceptance-of-responsibility adjustment, under U.S.S.G. § 3E1.1(a); and (3) the district court imposed a procedurally unreasonable sentence because it failed to consider all of the mitigating factors raised by Billings and listed in 18 U.S.C. § 3553(a). After careful review, we affirm.

We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. United States v. McCarty, 99 F.3d 383, 385 (11th Cir. 1996). The good faith, credibility, and weight of the defendant's representations in support of the motion to withdraw are issues for the trial court to decide. United States v. Buckles, 843 F.2d 469, 472 (11th Cir. 1988). We review the district court's interpretation of the Guidelines de novo, and its findings regarding the denial of an acceptance-of-responsibility adjustment for clear error. See United States v. Coe, 79 F.3d 126, 127 (11th Cir. 1996). The sentencing judge's determination regarding a defendant's acceptance of responsibility "is entitled to great deference on review." U.S.S.G. § 3E1.1(a), comment. (n.5).

We review a defendant's ultimate sentence for reasonableness. United States v. Booker, 543 U.S. 220, 264 (2005); United States v. Talley, 431 F.3d 784,

2

785 (11th Cir. 2005). Under the post-Booker, advisory Guidelines regime, district courts enjoy significant latitude in imposing criminal sentences. Rita v. United States, --- U.S. ---, 127 S. Ct. 2456, 2465 (2007); see also Gall v. United States, --- U.S. ---, No. 06-7949, 2007 WL 4292116, at *7 (U.S. Dec. 10, 2007). The reasonableness standard of appellate review is akin to abuse of discretion. See Gall, 2007 WL 4292116, at *7 ("Our explanation of 'reasonableness' review in the Booker opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions."); Kimbrough v. United States, 552 U.S. ----, 2007 WL 4292040, at *15 (Dec. 10, 2007) (stating that appellate courts must give "due respect to [a] District Court's reasoned appraisal" of the proper sentence for a defendant).

The relevant facts are these. On April 25, 2006, a federal grand jury indicted Billings on three counts of providing false information to a federally licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A). Billings entered a non-negotiated plea of guilty to all three counts and the district court conducted a plea colloquy. During that colloquy, the court asked Billings, in relevant part, whether he understood that "by pleading guilty to these charges the Court can sentence you to five years incarceration on each count." Billings answered affirmatively and further stated that he had talked with his attorney about the Sentencing Guidelines

3

and understood that the district court would have to consult the Guidelines before sentencing, but that it was not possible to determine how the Guidelines would affect his sentence until a Presentence Investigation Report ("PSI") was completed. Billings also said that he understood that he would still be bound by his guilty plea even if his sentence was more severe than he expected.

After finding that Billings's guilty plea was knowingly, voluntarily, and intelligently entered, the court accepted the plea and set a sentencing date. The following exchange then took place between the court and Billings's counsel:

COURT: All right, Mr. Billings. I assume the government doesn't oppose your remaining on bond and you need to follow the instructions of your attorney and the probation officer and be back on that date for sentencing. Have you got any questions? Oh, oh. I'm not going to lock you up today. What's the problem? The government is not going to lock you up. They waited four years to prosecute you.

COUNSEL: Judge, Mr. Billings, you may have seen his family here with him. He's got two young children, a four month and eighteen month old, and it's been weighing heavy on his mind, the possibility of time and how that will affect his family.

COURT: We are not going to make that decision today, but I encourage you to stay clean between now and then. Don't get arrested.

According to the PSI, information received from two pawn shops in or around Jonesboro, Georgia revealed that, in 2001 and 2002, Billings purchased

4

eight firearms. For each of these purchases, on the ATF Form 4473, Billings affirmed that he was the actual buyer, and he was not buying the firearms on behalf of another person. On March 3, 2003, during an interview with authorities, Billings stated that he had sold three of the firearms to "Calvin" and that the five others were stolen from him. Three day later, he told authorities that "Calvin" paid him to purchase all eight firearms. On March 24, 2004, Billings admitted to authorities that he actually bought 11 or 12 firearms for Chase Manning, and that his prior statements were untrue because "Calvin" was a fictitious name. Billings stated that Manning specifically identified the guns he wanted and gave Billings money to purchase the guns. In January 2005, Billings again admitted to authorities that Manning recruited him to purchase the firearms, and supplied the money for the purchases.

The PSI noted that, after his indictment in April 2006, Billings was released on bond, subject to certain conditions. In November 2006, he tested positive for marijuana. After two negative tests, he again tested positive in February 2007, which was one month after the plea colloquy hearing. He subsequently did not report for a scheduled urine screen in March 2007. The PSI noted that Billings had begun attending weekly counseling sessions and twice-weekly Narcotics Anonymous meetings. The PSI also noted that Billings had close family

5

relationships, and he lived in his mother's house with his wife and their two young children.

The PSI assigned Billings an adjusted offense level of 16, after denying Billings a 2-level adjustment for acceptance of responsibility because of his failed drug tests and failure to report for a drug test. With a criminal history category IV, Billings faced a Guidelines sentencing range of 33 to 41 months. Billings filed objections to the PSI's failure to award him an acceptance-of-responsibility adjustment and to the PSI's recommendation of a criminal history category IV.

At the sentencing hearing, Billings argued that he deserved an acceptance-of-responsibility adjustment because he had admitted his responsibility and cooperated with authorities and had entered a guilty plea. According to Billings, his positive tests for marijuana were unrelated to the crime at issue, and they were outweighed by his actions demonstrating acceptance of responsibility. Defense counsel also noted that Billings was undergoing treatment and attending classes regarding his prior marijuana use, and all his recent tests had come back negative.

The district court noted that although it could "probably forgive" one positive test for marijuana, there had been multiple positive tests and Billings had missed a scheduled test. In adopting the PSI's offense level computations, including the denial of the acceptance-of-responsibility adjustment, the district

court noted that the authorities had trouble acquiring information in their investigation, and Billings "gave them false statements . . . that made the investigation take longer."

The district court sustained Billings's objection regarding his criminal history category, and lowered it to a category III, which yielded a Guidelines range of 27 to 33 months' imprisonment. The court then invited Billings to present mitigating evidence on the sentence to be imposed.

Billings's mother testified on his behalf, describing his positive role in the family and as a father to his young children. Counsel for Billings then presented argument on the § 3553(a) factors, urging that a sentence of probation without incarceration would be sufficient. Specifically, counsel highlighted Billings's family situation, including his responsibilities as a father, and that Billings was no longer inclined to commit criminal conduct. Counsel also stated that Billings's recent use of marijuana was due to stress related to this case and the health of his son. Finally, counsel noted that Billings was undergoing treatment for his marijuana problem, that Billings's offense conduct occurred in 2002, and that Billings had been cooperative and truthful at nearly all stages of the investigation.

The court then heard Billings's statement, during which he said that he was a changed man, and that his family was the most important thing in his life.

The district court imposed sentences of 27 months' imprisonment for each count, to be served concurrently, which fell at the low end of the Guidelines range. In imposing sentence, the court stated that it had considered "the guidelines under the statute on the defendant's behalf" and noted that the following factors weighed in favor of Billings: (1) the time between the offense conduct and sentencing; (2) the fact that Billings was employed; (3) his family's support; and (4) his role in supporting his family and love for his children. Despite these mitigating factors, however, the court found that a 27-month total sentence was justified in light of Billings's prior criminal record, his use of marijuana before sentencing, his lack of a positive work history, and the offense at issue.

Before the sentencing hearing concluded, Billings personally objected that he thought that he would not receive any jail time based on the judge's statements at his plea hearing. Counsel explained that Billings was referring to the statement made by the judge after Billings entered his plea and the court accepted it. The district court responded, "I don't want any misunderstanding on his part. I'll allow him to withdraw his plea if he feels like he has been tricked or manipulated."

Billings subsequently filed a motion to withdraw his guilty plea. At a hearing on the motion, Billings argued that the district court's statements at the end of the plea hearing gave Billings and his counsel the impression that Billings's

final sentence would not involve incarceration. Counsel asserted that this impression affected the way he and Billings prepared for the sentencing hearing.

The district court denied Billings's motion to withdraw his guilty plea, finding that the statement at issue from the plea hearing did not refer to Billings's ultimate sentence and did not affect the guilty plea because the plea colloquy indicated that Billings understood how sentencing would proceed and the statement was made after Billings's plea was accepted. The court also noted that it had made the statement after Billings became emotional, at which point the court was trying to assure him that it would not revoke his bond or lock him up on that day. This appeal followed.

First, Billings asserts the district court erred by denying his motion to withdraw his guilty plea, in which he argued that the district court misled him at the plea colloquy when the court stated, "I'm not going to lock you up today. What's the problem? The government is not going to lock you up. They waited four years to prosecute you." Notably, the foregoing statement was made at the close of the hearing on Billings's guilty plea, after the court had accepted the plea as knowingly, voluntarily, and intelligently made.

A defendant may withdraw a guilty plea after the court accepts the plea, but before it imposes sentence, if the defendant shows "a fair and just reason for

requesting the withdrawal." Fed. R. Crim. P. 11(d). In determining whether the defendant showed a fair and just reason, within the meaning of Rule 11, the district court may consider the totality of the circumstances surrounding the plea, including the following factors: (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced by the plea withdrawal. Buckles, 843 F.2d at 472 (internal citations omitted).

The district court conducts a plea colloquy, pursuant to Rule 11, in order to ensure that a defendant's guilty plea is knowing and voluntary. United States v. Hernandez-Fraire, 208 F.3d 945, 949 (11th Cir. 2000). There is a strong presumption that statements made during the Rule 11 plea colloquy are true. United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). For example, we considered a case where the defendant asked to withdraw his plea because he was under the mistaken impression that he would receive an 18-month sentence, despite his statement at the colloquy that he understood that the 18-month sentence was only a non-binding recommendation. United States v. Gonzalez-Mercado, 808 F.2d 796, 799 (11th Cir. 1987). "To the extent that the appellant did not understand or failed to note his misunderstanding, the district court cannot

speculate, but rather must rely solely on the appellant's sworn statement that he . . . understood the possible consequences of his guilty plea." Id. at 799-800. We found that the district court had not abused its discretion by denying the defendant's motion to withdraw because it was reasonable to conclude that the defendant understood the consequences of his guilty plea. Id. at 800-01.

We discern no abuse of discretion here. From our review of the record, the district court reasonably concluded, at the end of the plea colloquy, that Billings understood the range of possible sentences, how sentencing would proceed, and the other consequences of his guilty plea. At no point did the court promise a non-custodial sentence. Moreover, Billings never exhibited any confusion at the change-of-plea hearing regarding the district court's statements, and the challenged statements concerning whether Billings would be imprisoned immediately following the hearing occurred after the district court already accepted his plea. On this record, the district court did not abuse its discretion by denying Billings's motion to withdraw his plea.

We likewise are unpersuaded by Billings's argument that the district court erred by denying him an acceptance-of-responsibility adjustment under U.S.S.G. § 3E1.1(a). A defendant is entitled to a two-point decrease to his offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G.

11

§ 3E1.1(a). "The defendant bears the burden of clearly demonstrating acceptance of responsibility and must present more than just a guilty plea." United States v. Sawyer, 180 F.3d 1319, 1323 (11th Cir. 1999).

In determining whether the defendant is entitled to this adjustment, the district court may consider, among other relevant factors, whether the defendant truthfully admitted his relevant conduct. See U.S.S.G. § 3E1.1(a), comment. (n.1(a)). "[A] defendant who falsely denies . . . relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." Id.

The district court also may consider whether the defendant voluntarily terminated his criminal conduct after being indicted on the federal charges. Id., comment. (n.1(b)). Conduct may be relevant even if unrelated to the offense of conviction. United States v. Pace, 17 F.3d 341, 343 (11th Cir. 1994). Moreover, conduct inconsistent with acceptance of responsibility may outweigh a defendant's guilty plea and his truthful admission of relevant conduct. U.S.S.G. § 3E1.1(a), comment. (n.3). Thus, even where a defendant provided authorities with information, he was not due a § 3E1.1(a) adjustment where evidence showed that he continued to use cocaine after his arrest on charges unrelated to drug use. United States v. Scroggins, 880 F.2d 1204, 1205, 1215-16 (11th Cir. 1989).

12

The present record indicates that the district court properly considered, among other factors, Billings's post-indictment positive marijuana tests, as well as the drug test he skipped, in denying an adjustment for acceptance of responsibility. We likewise discern no error in the district court's consideration of Billings's pre-indictment false statements to investigators regarding the true identity of the person for whom he was purchasing firearms. In short, we are satisfied that the district court properly exercised its discretion in weighing the relevant factors and denying the adjustment.

Finally, Billings challenges the reasonableness of his sentence. Billings says that his sentence was procedurally unreasonable because the district court failed to properly consider all of the relevant mitigating factors on which he presented evidence, including that (1) a custodial sentence would harm Billings's family and family relationships; (2) a non-custodial sentence would sufficiently reflect the seriousness of the crime; and (3) a non-custodial sentence would provide him with education and treatment without harming his family.

A defendant may challenge his sentence based on procedural or substantive unreasonableness. United States v. Hunt, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006). In its recent Gall decision, the Supreme Court explained that "significant" procedural errors include errors such as "failing to calculate (or improperly

13

calculating) the Guidelines range, treating the Guidelines as mandatory, <u>failing to consider the § 3553(a) factors</u>, selecting a sentence based on clearly erroneous facts, or <u>failing to adequately explain the chosen sentence</u> -- including an explanation for any deviation from the Guidelines range." <u>Gall</u>, 2007 WL 4292116, at *7 (emphasis added); <u>see also</u> <u>United States v. Agbai</u>, 497 F.3d 1226, 1229 (11th Cir. 2007) (holding that when a defendant challenges his sentence based on the district court's failure to consider § 3553(a) factors, as applied to him, he is challenging the procedural reasonableness of his sentence).

In announcing sentence, the district court must give a legally sufficient statement of reasons under 18 U.S.C. § 3553(c). However, the district court need not discuss each § 3553(a) factor. <u>Talley</u>, 431 F.3d at 786. Nor is the court required to "explicitly articulate that it had considered the § 3553(a) factors." <u>United States v. Dorman</u>, 488 F.3d 936, 944 (11th Cir. 2007); <u>Rita</u>, 127 S. Ct. at 2468-69 (2007) (inferring district court's reasoning from context and examination of whole record). The Supreme Court has held that a lengthy discussion is not required in the typical case, as long as the sentencing judge "set[s] forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." <u>Rita</u>, 127 S. Ct. at 2468 (citation omitted).

14

Here, the district court did not impose a procedurally unreasonable sentence because the record indicates that the court adequately considered Billings's arguments and the § 3553(a) factors. The court heard the arguments presented by counsel for Billings, as well as the statements made on his behalf, and it explicitly stated that, in imposing sentence, it had considered the statutory factors weighing in Billings's favor. On this record, we are satisfied that satisfy the district court "considered the parties' arguments and ha[d] a reasoned basis for exercising his own legal decisionmaking authority." Rita, 127 S. Ct. at 2468 (citation omitted). Put simply, Billings has not demonstrated that his sentence is procedurally unreasonable.

**AFFIRMED.**