[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 27, 2008
THOMAS K. KAHN
CLERK

No. 07-15458
Non-Argument Calendar

_____

D. C. Docket No. 06-00259-CR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRUCE MICHAEL ORR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(August 27, 2008)**

Before ANDERSON, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Bruce Michael Orr appeals his conviction and 168-month sentence for (1) receiving child pornography in violation of 18 U.S.C. §§ 2252A(a)(2), (b)(1); and (2) possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). For the reasons stated below, we affirm.

**Facts**

Bruce Orr ("Bruce") was married to Salinda Orr and lived with her and Salinda's daughter from a previous relationship, "M." Mr. and Mrs. Orr had been having marital difficulties and agreed that Salinda and M would live on the bottom floor of the house while Bruce would live upstairs. A computer with internet access was accessible to all three and was kept downstairs.

In March of 2005, Salinda took the computer to John Goodman, the teacher in a computer class taught at Salinda's church. She complained to Goodman that the computer was running slowly and that it crashed often. Goodman took the computer to a technician who discovered pornographic images of children on the computer and the technician returned the computer to Goodman. Goodman informed Salinda of the images and removed the original hard drive (referred to as Q-2) and placed it into an antistatic bag for protection from static interference or anything that might erase its contents. Goodman then installed a hard drive onto the computer (referred to as Q-3), along with a new operating system, Windows

2

XP. Goodman then created three accounts with password protection, one each for Bruce, Salinda, and M. It was possible, however, that each user could change the passwords of other users and log-in as those other users by way of the administrator account. Goodman then returned the computer to Salinda sometime in mid-to-late April. Bruce was not told that anybody knew of the images on the Q-2.

The events of June 18, 2005 were disputed at trial. According to the Government, Bruce was using the computer and stepped away. M then went to the computer and found images of child pornography and notified Salinda, who then took pictures of the screen using a digital camera. An argument ensued in which Salinda told Bruce that she knew of the images on Q-2 and that Goodman had the hard drive. Bruce responded, threatening Salinda, and stating that she had better get the hard drive back. Salinda then notified the FBI.

According to Bruce, he entered the house on the 18th and noticed Salinda and M at the computer. He stated that they were shielding the screen from him. He claimed that Salinda was using the threat of child pornography as an attempt to blackmail him in their divorce proceedings.

Between the two hard drives, forensic experts found thousands of images containing child pornography. They also found that the Bruce account had

3

accessed child pornography on multiple occasions. On some days, thousands of images were accessed. Evidence also showed that the user of the Bruce account searched the internet using terms such as "Lolita," "kids," "child," "porno," and "illegal." The Bruce account also visited a website containing references to "extreme Lolitas" 328 times.

No evidence existed that the other two accounts ever accessed child pornography, nor was there evidence that any other child pornography existed at the house or in any other disc, CD, or DVD. On June 18th, a user logged in under the M account, changed Bruce's account password and deleted the files contained in the temporary internet folder, a folder that saves images of the websites visited. A shortcut to all the child pornographic images that were stored in the "favorites" folder in the Bruce account was also deleted. Both the temporary internet files and the shortcut were restored by the Government's forensic expert, who stated that the index.dat file could not be deleted and that this file contained a list of all the websites visited.

Bruce testified that he used the terms "Lolita" and "teen" to search for adult pornography. He stated that child pornography would "pop-up" on the screen when he would search for adult pornography but that he would close the windows because he was not interested in it.

Bruce obtained a forensic expert, Michael Black. Prior to the trial, Bruce's trial counsel failed to comply with requirements relating to the disclosure of his forensic expert's report and the judge limited the extent to which Black could testify.

The jury returned a guilty verdict for both receiving and possessing child pornography. At sentencing, the judge applied an enhancement for obstruction of justice based on Bruce's testimony that he did not intend to view child pornography by using the search terms "Lolita" or "preteen," etc. The judge then sentenced Bruce to 168 months, the bottom of the Sentencing Guidelines range.

**Discussion**

(1) *Ineffective Assistance of Counsel*

Bruce argues that he was constitutionally deprived of his Sixth Amendment right to effective assistance of counsel and that the district court erred in denying his motion for a new trial because his trial counsel was ineffective.

Whether a criminal defendant's trial counsel was constitutionally ineffective is a mixed question of law and fact, subject to de novo review. United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). We review a district court's denial of a motion for new trial for an abuse of discretion. United States v. Tokars, 95 F.3d 1520, 1531 (11th Cir. 1996). This court does not generally consider claims

of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim or develop a factual record. Bender, 209 F.3d at 1284. However, this court can review an ineffective assistance of counsel claim on direct appeal so long as there is sufficient evidence in the trial record regarding the claim. Id. An ineffective assistance of counsel claim is considered under the two-prong test announced in Strickland v. Washington 466 U.S. 668, 687 (1984). Under the first, deficient performance prong, the appellant must show that counsel made errors so serious he was not functioning as the counsel guaranteed by the Sixth Amendment. Id. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Id. at 689. Under the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Here, the record is sufficiently developed for this court to hear the ineffective assistance claim on appeal; Bruce raised this issue in his Motion for New Trial and the court addressed it at length. See United States v. Camacho, 40 F.3d 349, 355 n.6 (11th Cir. 1994). Bruce's claim fails, however, because he has not demonstrated that he was prejudiced by the fact that Black's expert testimony was limited. According to Bruce's brief, had Black been able to testify without

6

limitation, he would have testified to the following: (1) although the Bruce account on the computer had administrative rights to the computer, so did all user accounts; (2) the password to the Bruce account was changed on June 18th by the user of the M account; and (3) the shortcut to the temporary internet file folder which was created when the computer was under Goodman's care was also accessed and deleted.

The record on appeal demonstrates that these issues were presented at trial when Bruce's counsel cross-examined the Government's expert. Further, Bruce fails to explain how any testimony Black would have provided would have influenced the outcome. Thus, even assuming that Bruce meets the first Strickland prong, he fails to show that but-for any trial counsel error, the result of the proceeding would have been different.

*(2) Sentencing Enhancement for Obstruction of Justice, under U.S.S.G. § 3C1.1*

Bruce contends that although a § 3C1.1, two-level enhancement is appropriate if a defendant commits perjury, the district court erred in concluding that Bruce perjured himself.

We review a district court's factual findings regarding the imposition of a sentencing enhancement for obstruction of justice for clear error and its application of the factual findings to the Sentencing Guidelines de novo. United

States v. Tampas, 493 F.3d 1291, 1303 (11th Cir. 2007). We give great deference to the district court's credibility determinations where the court must make an assessment of the credibility or the demeanor of the defendant, such as when applying the obstruction of justice enhancement for perjury. United States v. Banks, 347 F.3d 1266, 1269 (11th Cir. 2003).

Under U.S.S.G. § 3C1.1, a defendant may qualify for a two-level enhancement if he or she "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and [] the obstructive conduct related to [] the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1. One may obstruct or impede justice by "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1, comment. (n.4(b)). For the purpose of an obstruction finding pursuant to § 3C1.1, perjury has been defined as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). For purposes of U.S.S.G. § 3C1.1, "'Material'. . . means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n.6). "When applying this

8

enhancement, the district court [should] make specific findings as to each alleged instance of obstruction by identifying the materially false statements individually. . . . However, a general finding that an enhancement is warranted suffices if it encompasses all of the factual predicates necessary for a perjury finding." United States v. Singh, 291 F.3d 756, 763 (11th Cir. 2002). Four elements must be present in order for a court to make a finding that a defendant perjured himself: (1) the testimony must be under oath or affirmation; (2) the testimony must be false; (3) the testimony must be material; and (4) the testimony must be given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory. Id. at 763 n.4.

The Government's expert witness testified that when he performed his analysis of Q-3, he found internet searches containing the terms "Lolita," "preteen," "kids," "child," "porno," and "illegal." He further testified that he found over 3,000 images of child pornography in the temporary internet folder and that there were 328 visits by the Bruce account to a website containing references to "extreme Lolitas."

Bruce testified that when he used the search terms "Lolita," "teen," and "preteen," he did so to find adult—not child—pornography. The district court

9

found Bruce's testimony to be incredible in light of the evidence. We cannot say that the court's finding is clearly erroneous.

*(3) Reasonable Sentence*

Bruce further contends that his sentence is substantially unreasonable because the district court did not adequately weigh all the § 3553(a) factors and placed too much weight on the need for deterrence and punishment.[1]

We review the final sentence imposed by the district court for reasonableness. United States v. Agbai, 497 F.3d 1226, 1229 (11th Cir. 2007). We review for reasonableness under an abuse-of-discretion standard. Gall, 552 U.S. at __, 128 S.Ct. at 597.

The district court must impose a sentence that is both procedurally and substantively reasonable. Id. If the district court made no procedural errors, then the substantive reasonableness of the sentence imposed is reviewed to determine whether the sentence is supported by the § 3553(a) factors. Gall, 128 S.Ct. at 600. The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need

---

[1] Bruce specifically states that he is not alleging on appeal that the sentence is procedurally unreasonable.

to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

18 U.S.C. § 3553(a). When a district court sentences a defendant within the Guidelines range, only a brief discussion of the reasons for the sentences is required and the district court need not explicitly address each of the sentencing factors. See United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).

Bruce's argument is without merit. The sentence imposed by the court was at the bottom of the advisory Guidelines range. The record demonstrates that when imposing Bruce's sentence, the district court stated that a Guideline sentence was appropriate in this case given the statutory purposes for sentencing - specifically deterrence and incapacitation. After imposing the sentence, the court stated "I find the guideline range appropriate to the facts and circumstances of this case and find that the sentence imposed addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation, while being reasonable in light of the statutory purposes of sentencing." Only a brief discussion of the reasons for the sentences is required, and the district court need

not explicitly address each of the sentencing factors.  <u>Scott</u>, 426 F.3d at 1329.  We cannot say that the district court erred in imposing the sentence.

Accordingly, we **AFFIRM**.