[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10443
Non-Argument Calendar

_____

D.C. Docket No. 4:15-cr-00206-WTM-GRS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMAL DAVIS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(May 18, 2018)

Before TJOFLAT, NEWSOM and HULL, Circuit Judges.

PER CURIAM:

Jamal Davis appeals his 120-month sentence after pleading guilty to

possession of a firearm and ammunition by a convicted felon, in violation of 18

U.S.C. §§ 922(g)(1) and 924(a)(2).  On appeal, Davis argues that the district court plainly erred in (1) applying an increase to his base offense level for reckless endangerment during flight, under U.S.S.G. § 3C1.2, and (2) treating the Sentencing Guidelines as mandatory or presumptively reasonable.  After careful review of the record and the parties' briefs, we conclude that the district court did not treat Davis's advisory guidelines range as mandatory or presumptively reasonable, and that the record supports the § 3C1.2 increase.  Accordingly, we affirm.

## I. BACKGROUND

### A.    Offense Conduct

On October 31, 2015, a Savannah police officer observed Davis walk between two vehicles in a parking lot, kneel down, then stand back up and adjust his waistband.  The officer subsequently discovered a 9mm semiautomatic pistol with a 31-round magazine in the area where he had seen Davis kneeling down.  Davis was arrested, charged in state court with possession of a firearm by a convicted felon and reckless conduct, and ultimately released on bond on November 14, 2015.

Several months later, on March 17, 2016, Davis allegedly shot at two women outside of a Savannah public housing complex.  As a result of that alleged

conduct, federal and state arrest warrants were issued for Davis for, among other things, aggravated assault and possession of a firearm by a convicted felon.

On March 30, 2016, Savannah police officers observed Davis driving a silver Oldsmobile Alero. The officers followed Davis until he pulled into a driveway and parked beneath a carport. While Davis was still in the vehicle with the engine running, officers in both marked and unmarked vehicles moved in to arrest him. The blue lights of the marked vehicles were on at the time, and the officers yelled out "police" as they approached Davis's vehicle.

As the officers got close to the vehicle, they saw Davis sitting in the driver's seat with a gun tucked under his leg. The officers verbally instructed Davis to turn off the engine and unlock the vehicle's doors, but Davis did not comply with their commands. Instead, Davis attempted to flee in his vehicle by pressing on the gas pedal, but the loose sand in the carport prevented the vehicle from moving. Nevertheless, Davis continued to spin the tires, causing the engine to smoke.

An officer then broke the driver's side window of Davis's vehicle and instructed Davis to raise his hands. When Davis continued to ignore the officers' orders, an officer deployed a taser on Davis four times in five-second cycles. remained noncompliant during the first three taser cycles, and the firearm remained tucked under his leg. During the fourth cycle, an officer was able to reach in and retrieve the firearm from under Davis's leg, after which Davis became compliant.

3

The officers then removed Davis from the vehicle and placed him under arrest. In addition to the firearm (a loaded .40 caliber semiautomatic pistol) officers also recovered 1.9 grams of marijuana from Davis's vehicle.

## B.    Indictment and Guilty Plea

As a result of the above conduct, a federal grand jury charged Davis in a second superseding indictment with: (1) two counts of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Counts 1 and 3); (2) two counts of possession of a firearm and ammunition by a person convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2) (Counts 2 and 4); (3) one count of receipt of a firearm by a person under indictment, in violation of 18 U.S.C. §§ 922(n) and 924(a)(1)(D) (Count 5); and (4) one count of possession marijuana, in violation of 21 U.S.C. § 844(a) (Count 6).

Pursuant to a written agreement, Davis ultimately pled guilty to Count 3 of the superseding indictment—the felon in possession charge arising from his March 30, 2016 possession during his arrest in his vehicle—and the government dismissed the remaining charges. At the change of plea hearing, the district court advised Davis, among other things, that although the government was dismissing the remaining counts in the superseding indictment, "according to the Advisory Sentencing Guidelines, the charges against you in those counts may still play a part

4

in the calculation of sentence." The district court further explained that Davis faced a maximum term of 10 years' imprisonment on Count 3, "but the Sentencing Guidelines . . . will be considered by th[e] court in an advisory manner when deciding and determining the appropriate sentence in your case." Davis confirmed that he understood the district court "[was] going to use the guideline ranges as advisory when deciding upon the sentence."

The district court further stated:

> In certain limited ways the Court has a right to depart from the Advisory Guidelines, downward or upward, and you will have a right to appeal the sentence and the government will have a right to appeal the sentence. And even though you have a plea agreement with the government, I want to make it clear that I'm unlikely to sentence you outside of the range of your Advisory Guidelines. Any recommendation from the government will be considered by the Court, but the Court is not bound by a government recommendation.

The district court then reviewed the terms of the plea agreement and the charge in Count 3 with Davis, and Davis confirmed that he was pleading guilty to that charge. To establish a factual basis for the plea, the government presented the testimony of Special Agent Lee Hoover of the Bureau of Alcohol, Tobacco, Firearms and Explosives. Special Agent Hoover recounted the circumstances of Davis's March 30, 2016 arrest, and Davis confirmed that Hoover's account was accurate.

## C.    Presentence Report

Prior to sentencing, a probation officer prepared a presentence report ("PSR"), which recounted Davis's offense conduct and criminal history and calculated his advisory guidelines range.  The probation officer calculated a base offense level of 26 under U.S.S.G. § 2K2.1(a)(1) because Davis had two prior felony convictions for a crime of violence or a controlled substance offense— namely, (1) a 2004 Georgia conviction for robbery, and (2) a 2011 Georgia conviction for possession of marijuana with intent to distribute.  Davis received a two-level increase under U.S.S.G. § 2K2.1(b)(4)(A) because one of the firearms he possessed had been stolen.  He received another two-level increase under U.S.S.G. § 3C1.2 because he recklessly created a substantial risk of death or serious bodily injury in the course of attempting to flee from a law enforcement officer.  Davis also received a three-level decrease under U.S.S.G. § 3E1.1(a) and (b) for his acceptance of responsibility, resulting in a total offense level of 27.

Based on his criminal history, Davis received a criminal history score of 18, placing him in a criminal history category of VI.  With a criminal history category of VI and a total offense level of 27, Davis's advisory guidelines range was 130 to 162 months' imprisonment.  Because Count 3 carried a statutory maximum sentence of only 120 months (10 years), however, Davis's advisory guidelines range became 120 months' imprisonment.  Davis made no objections to the PSR.

**D.    Sentencing**

At sentencing, Davis confirmed that he had no objections to the PSR, and the district court accordingly adopted the PSR's factual statements and guidelines calculations.  Davis then argued for a below-guidelines sentence, explaining that he had become involved with the criminal justice system at a young age and became "a prime example of the school-to-prison pipeline."  Davis noted that he had limited contact with his parents growing up, in part because his father was in and out of prison during his childhood, and that Davis himself became involved with the criminal justice system at age 17 and did not graduate from high school.  Davis further argued that, despite his prior criminal history, he was an active father to his children and had been employed prior to his present conviction.  Davis submitted that a 10-year sentence outweighed the seriousness of the crime, as he was not using the firearm to engage in other criminal conduct at the time of his arrest.  Davis also contended that a 10-year sentence would not serve as a deterrent to society, and maintained that "the goal of our criminal justice system is to rehabilitate and not to solely punish."

The district court responded that Davis had an extensive criminal history, particularly in light of his relatively young age (not yet 30), and "nothing has served as a deterrent to Mr. Davis."  The district court elaborated:

> I mean he's been before the Court over and over and over again.  He's been placed on probation in the State Court system over and over and

7

over again, and yet, he continues to engage in criminal behavior. So there's been nothing so far that's been a deterrent to Mr. Davis's going out and committing another crime.

Davis responded that the answer to that problem was not more prison, but rather rehabilitative measures, such as education and counseling. The district court again emphasized the need to deter Davis given his seemingly intractable pattern of getting out of jail and soon thereafter committing more crimes or violating probation.

The government argued that a guidelines sentence was appropriate in Davis's case given his extensive and violent criminal history, highlighting some of his more troubling prior convictions, including a violent armed robbery at age 17, battery on a pregnant woman at age 24, and the alleged shooting in March 2016. The government further noted that Davis's conduct in this case—attempting to flee in his vehicle with a loaded firearm under his leg—was consistent with Davis's overall criminal history.

After Davis allocuted, the district court imposed sentence. In doing so, the district court stated: "I've listened to the defendant and to defendant's counsel. I've listened to counsel for the government. I've reviewed the presentence investigation report and the addendum. I've also considered the factors set forth at 18 United States Code Section 3553(a)." The district court then sentenced Davis to 120 months' imprisonment, and stated that it found "no reason to depart from

8

the sentence called for by application of the Advisory Guidelines inasmuch as the facts found are the kind contemplated by the Sentencing Commission."  After pronouncing sentence, the district court asked the parties whether they had "any objections to the Court's findings of fact, conclusions of law or the manner in which the sentence was pronounced."  Davis responded that he had no objection.

## II. DISCUSSION

Davis raises two claims on appeal: (1) that the district court erred in applying the two-level increase under § 3C1.2 for reckless endangerment during flight; and (2) that the district court erred by treating the Guidelines as either mandatory or presumptively reasonable.  Because Davis did not raise these objections in the district court, we review both of his claims only for plain error. United States v. Perez, 661 F.3d 568, 583 (11th Cir. 2011).  To demonstrate plain error, Davis must show: (1) an error, (2) that is plain, (3) that affects his substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of a judicial proceeding.  Id.

### A.    Reckless Endangerment Increase

Section 3C1.2 of the Sentencing Guidelines provides for a two-level increase in a defendant's base offense level "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."  U.S.S.G. § 3C1.2.  The term "during

9

flight" is construed broadly, and includes conduct occurring in preparation for flight or in the course of resisting arrest. Id. § 3C1.2 cmt. n.3. Nevertheless, flight alone is insufficient to apply the enhancement. United States v. Matchett, 802 F.3d 1185, 1197 (11th Cir. 2015). Rather, the defendant's flight must be accompanied by a substantial risk of death or serious bodily injury that the defendant recklessly created, as when a defendant drives at a high rate of speed in an area where people are in close proximity. See id.; United States v. Washington, 434 F.3d 1265, 1268 (11th Cir. 2006).

Conduct that could potentially harm a police officer or a third party is sufficiently reckless to warrant the § 3C1.2 enhancement, even if the defendant did not actually cause such harm. Matchett, 802 F.3d at 1198. This is because § 3C1.2 "requires only that there was a substantial risk that something could have gone wrong and someone could have died or been seriously injured." Id. Thus, in Matchett, this Court held that the district court did not err in applying the § 3C1.2 enhancement to a defendant who resisted arrest and struggled with a police officer for several minutes while carrying a loaded handgun in his pocket because there was a significant chance that the firearm could have accidentally discharged during the struggle. Id. at 1197-98.

The district court did not plainly err in applying the § 3C1.2 enhancement here based on Davis's undisputed conduct. Davis actively attempted to flee as

officers approached his vehicle, causing his tires to spin and his engine to smoke, and continued in that attempt despite the officers' repeated warnings to turn off the engine and exit the vehicle.  Indeed, Davis only halted his attempt to flee after officers had broken his driver's side window, tased him several times, and secured the loaded pistol Davis had tucked under his leg.  Had Davis's tires found purchase on the loose sand in the carport at any point during this course of events, there is a substantial risk that one of the officers approaching the vehicle could have been struck and killed or seriously injured.  See id. at 1197-98.  Accordingly, Davis's conduct was sufficiently reckless to warrant application of the § 3C1.2 enhancement.

Davis also argues that application of the § 3C1.2 enhancement constituted impermissible double counting to the extent that it relied on his possession of a loaded gun during his attempted flight, as that conduct was already taken into consideration in calculating his base offense level.  As we have explained, however, the enhancement applied based on the overall risk Davis created in attempting to flee in his vehicle as the officers approached, not merely on the presence of a loaded firearm in the vehicle.  Thus, the § 3C1.2 enhancement addressed a different harm than Davis's base offense level, and no impermissible double counting occurred.  See United States v. Cubero, 754 F.3d 888, 894 (11th Cir. 2014) ("Impermissible double counting occurs only when one part of the

11

Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." (quotation marks omitted)).

## B.    Consideration of the Advisory Guidelines Range

Prior to the Supreme Court's decision in Booker,[1] the Sentencing Guidelines were mandatory, and a district court's authority to impose a sentence outside of the guidelines range was narrowly circumscribed.  See Irizarry v. United States, 553 U.S. 708, 713, 128 S. Ct. 2198, 2202 (2008).  Under the post-Booker, advisory guidelines regime, district courts may still "depart" from the Guidelines to sentence a defendant outside of his guidelines range under the departure framework set out in the Guidelines.  See Irizarry, 553 U.S. at 714, 128 S. Ct. at 2202 ("'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines.").  Additionally, district courts now also have broad discretion to "vary" from a defendant's advisory guidelines range and impose "a non-Guidelines sentence outside the Guidelines framework" based on consideration of the 18 U.S.C. § 3553(a) factors.[2]  See Pepper v. United States, 562 U.S. 476, 498 n.12, 131 S. Ct. 1229, 1245 n.12 (2011).

---

[1]United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).

[2]Under § 3553(a), a district court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), which include the

Because the Guidelines are now advisory, district courts may not apply them as if they were mandatory or treat the guidelines range as presumptively reasonable.  United States v. Hill, 643 F.3d 807, 880 (11th Cir. 2011).  Rather, the district court "must make an individualized assessment based on the facts presented," using the guidelines range as "the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49-50, 128 S. Ct. 586, 596-97 (2007).  In determining whether the district court improperly treated the Guidelines as mandatory or presumptively reasonable, we consider whether the district court made any statements to that effect, specifically noted that the Guidelines are advisory, analyzed the § 3553(a) factors, and considered the defendant's argument for a non-guidelines sentence.  See United States v. Carpenter, 803 F.3d 1224, 1233 (11th Cir. 2015).

## C.    Davis's Sentence

On this record, we conclude that the district court did not treat the Guidelines as mandatory or presumptively reasonable in sentencing Davis to a guidelines sentence of 120 months.  Both at the plea hearing and at sentencing, the district court repeatedly referred to the Guidelines as "advisory" and stated that it

---

need to: (1) reflect the seriousness of the offense, (2) promote respect for the law, (3) provide just punishment for the offense, (4) deter criminal conduct, and (5) protect the public from the defendant's future criminal conduct.  18 U.S.C. § 3553(a)(2).  In imposing a particular sentence, the district court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, any pertinent policy statements of the Sentencing Commission, and the need to avoid unwarranted sentence disparities.  Id. § 3553(a)(1), (3)-(6).

13

would consider the guidelines range "in an advisory manner when deciding and determining the appropriate sentence in [Davis's] case." Carpenter, 803 F.3d at 1233.  Additionally, the district court's statements at sentencing demonstrate that it made an individualized assessment that a guidelines sentence was appropriate in Davis's case based on his history, characteristics, and the need for deterrence. Gall, 552 U.S. at 49-50, 128 S. Ct. at 596-97.  Specifically, in responding to Davis's arguments for a below-guidelines sentence, the district court noted Davis's extensive criminal history given his relatively young age and remarked that his prior stints in jail and on probation appeared to have no deterrent effect on Davis. See 18 U.S.C. § 3553(a)(1), (2)(B).

Moreover, in imposing sentence, the district court explicitly stated that it had considered both parties' arguments, the PSR, and the § 3553(a) factors, and explained that it found "no reason to depart from the sentence called for by application of the Advisory Guidelines inasmuch as the facts found are the kind contemplated by the Sentencing Commission." Carpenter, 803 F.3d at 1233.  In other words, the district court understood its authority to impose a sentence outside of the guidelines range, but determined that the advisory guidelines range appropriately took into account the facts of Davis's case and that Davis's "personal circumstances were simply not different enough to warrant" a below-guidelines sentence.  See United States v. Agbai, 497 F.3d 1226, 1230 (11th Cir. 2007).

14

Davis nevertheless argues that the district court's statements <u>at his plea</u> <u>hearing</u>—that the district court could depart from the Guidelines only "[i]n certain limited ways" and that it was "unlikely to sentence [Davis] outside of the range of [his] Advisory Guidelines"—demonstrate that the district court viewed the Guidelines as mandatory, or at least as presumptively reasonable. We recognize that these statements, read in isolation, might suggest that the district court misunderstood its broad sentencing discretion or impermissibly presumed the guidelines' reasonableness. However, given the totality of the district court's statements both at the plea hearing and at sentencing, it is clear that the district court properly understood its discretion and merely determined that a guideline sentence was reasonable in light of the particular facts and circumstances of Davis's case.

## III. CONCLUSION

For the foregoing reasons, we conclude that the district court did not err, much less plainly err, by imposing the reckless endangerment during flight enhancement under § 3C1.2 and did not improperly treat the Guidelines as mandatory or presumptively reasonable. Accordingly, we affirm Davis's 120-month sentence.

**AFFIRMED.**

15